

FILED

APR 1 1 2012

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

In re                                     ) Case No. 09-35065-E-13
                                          )
BUN AUYEUNG and                           )
SOO HAN TSE,                              )
                                          )
                  Debtor(s).              )
_____          )
                                          )
BUN AUYEUNG and                           ) Adv. Pro. No. 10-2497
SOO HAN TSE,                              )
                                          )
                  Plaintiff(s),           )
v.                                        )
                                          )
BARTON CHRISTENSEN and                    )
PAULA CHRISTENSEN,                        )
                                          )
                  Defendant(s).           )
_____          )

**This memorandum decision is not approved for publication and may
not be cited except when relevant under the doctrine of law of the
case or the rules of claim preclusion or issue preclusion.**

**MEMORANDUM OPINION AND DECISION**

This Adversary Proceeding for declaratory relief, conversion
damages, and sanctions filed by Bun Auyeung and Soo Han Tse
("Plaintiff-Debtors"), the Chapter 13 Debtors, arises out of
conduct of Barton (Bart) Christensen and Paula Christensen
(collectively "Christensens") in the post-petition enforcement of
a pre-petition state court judgement.  The Plaintiff-Debtors
commenced their Chapter 13 bankruptcy case on July 21, 2009 (the

"Bankruptcy Case"). The Plaintiff-Debtors contend that:

(1) the Christensens violated the automatic stay by having the Sacramento County Sheriff ("Sheriff") conduct a judgment execution sale of personal property of the Plaintiff-Debtors (the "Sheriff's Sale Property") pursuant to the pre-petition state court judgment after commencement of the Bankruptcy Case,

(2) the Christensens knowingly and intentionally committed a continuing violation of the automatic stay by retaining possession of the Sheriff's Sale Property after they learned of the Bankruptcy Case on July 27, 2009,

(3) the Christensens converted the Sheriff's Sale Property by disposing of a portion of it and retaining possession of it in knowing violation of the automatic stay, and

(4) the Christensens further violated the automatic stay, by failing to recover that portion of the Sheriff's Sale Property when they learned of the Bankruptcy Case four days after disposing of that property to satisfy an obligation of the Christensens.

This proceeding is one arising under 11 U.S.C. § 362 of the Bankruptcy Code, the inherent contempt power of this court to address violations of the automatic stay, and California law concerning conversion of personal property. The cause of action for conversion is based on the same events relating to the Sheriff's Sale Property and overlaps the relief sought and damages properly awarded for violation of the automatic stay. Relief has been requested only pursuant to 11 U.S.C. § 362(k) and for conversion of the personal property.

The Complaint alleges that jurisdiction for this Adversary Proceeding arises under 28 U.S.C. §§ 1334(a) and 157(a), and the

reference from the District Court[1] of all bankruptcy cases and related proceedings to this bankruptcy court.[2]   It is further alleged in the Complaint that this is a core proceeding as provided in 28 U.S.C. § 157(b)(2)(O).[3]   In the Answer filed by the Christensens, they expressly state that they "do not deny," and therefore admit, that this bankruptcy court has jurisdiction and that this Adversary Proceeding is a core proceeding.   The bankruptcy judge enters the final judgment on all core proceedings.[4]

### FACTS RELATING TO THE VIOLATION OF THE AUTOMATIC STAY

Christensens obtained a monetary judgment against the Plaintiff-Debtors prior to the commencement of the Bankruptcy Case. The law firm of Dudugjian & Maxey ("The Attorneys") represented the Christensens in obtaining and enforcing the state court judgment. In assisting the Christensens in enforcing the monetary judgment, The Attorneys obtained a writ of sale for the Sheriff to conduct a sale of personal property of the Plaintiff-Debtors. The Plaintiff-Debtors commenced the Bankruptcy Case on July 21, 2009, but did not immediately notify the Christensens or The Attorneys of the Bankruptcy Case having been filed.

On July 23, 2009, the Christensens had the Sheriff conduct an

---

[1]   E.D. Cal. Gen. Order 223.

[2]   Complaint ¶ 5, Dckt. 1.

[3]   Complaint ¶ 6,   The enforcement of the automatic stay as it relates to property of the bankruptcy estate is a matter concerning the administration of the estate, 28 U.S.C. § 157(b)(2)(A), and that the federal court has exclusive jurisdiction over all property of the debtor and property of the estate, 28 U.S.C. § 1334(e)(1).

[4]   28 U.S.C. § 157(b)(1).

1    execution sale pursuant to a state court judgment obtained against
2    the Plaintiff-Debtors.   The evidence presented indicates that
3    neither the Sheriff, The Attorneys, nor the Christensens were aware
4    of the Bankruptcy Case at the time of the Sheriff's Sale.   The
5    Christensens were the successful purchasers of the Plaintiff-
6    Debtors' personal property at the foreclosure sale.   The purchase
7    price paid by the Christensens for the Sheriff's Sale Property was
8    $8,000.00 (in the form of a credit bid with a portion of their
9    judgment), which is the same amount as listed for the personal
10   property by the Plaintiff-Debtors on Schedule B.[5]

11       The Christensens learned of the Plaintiff-Debtors' bankruptcy
12   filing in a telephone conversation with their attorney, Robert
13   Dudugjian, a partner of The Attorneys, on July 27, 2009.   Robert
14   Dudugjian received a call on July 27, 2009, from the Sheriff's
15   Office advising him of the July 21, 2009 bankruptcy filing by the
16   Plaintiff-Debtors.   The court finds that the Christensens, Robert
17   Dudugjian, and The Attorneys were aware of the bankruptcy filing no
18   later than July 27, 2009.

19       In addition to the telephone call on July 27, 2009, by written
20   correspondence dated July 28, 2009, the Sheriff notified Robert
21   Dudugjian and The Attorneys of the Bankruptcy Case.[6]   On July 28,

22

23       [5]   Bankr. E.D. Cal. No. 09-35065-E-13C, Dckt. 1.

24       [6]   The evidence is clear that during all relevant time periods
     from the July 23, 2009 sale through this trial, the Christensens have
25   been represented by knowledgeable, experienced counsel from the
     Dudugjian & Maxey law firm.   This included Robert P. Dudugjian and
26   John Maxey, the name partners of that firm.   In addition to the court
     knowing that the attorneys in this law firm have knowledge of
27   bankruptcy law (including the automatic stay) from their appearances
     in other cases, John Maxey and Edward Smith testified to such
28                                                        (continued...)

                                    4

2009, Mr. Dudugjian obtained the assistance of one of The Attorneys' bankruptcy partners, John Maxey, in the representation of the Christensens.   In the July 28, 2009 correspondence, the Sheriff notified Robert Dudugjian and The Attorneys that the sale was void and that the Sheriff's Sale Property delivered to the Christensens had to be returned to the Sheriff.   The Christensens did not return the Sheriff's Sale Property to the Sheriff.

On July 28, 2009, John Maxey filed a request for special notice in the Bankruptcy Case and that The Attorneys be added to the list of addresses for notice in this case on behalf of the Christensens.[7]   Thereafter, on November 25, 2009, the Christensens filed their Proof of Claim in Plaintiff-Debtors' bankruptcy case. The Proof of Claim was executed by John D. Maxey as "attorney for judgment creditors."[8]

Notwithstanding learning of the bankruptcy filing on July 27, 2009, the Christensens continued in possession of the Sheriff's Sale Property until they returned only a portion of it to the Plaintiff-Debtors on March 23, 2011, almost two years later.   Not returned to the Plaintiff-Debtors was personal property including

---

[6](...continued)
knowledge and experience in this Adversary Proceeding.   In both his declaration in opposition to the Plaintiff-Debtors' motion for summary judgment and in his Alternative Direct Testimony Statement in this Adversary Proceeding, John Maxey has testified under penalty of perjury that, "A substantial portion of my practice of law is in the field of bankruptcy and hence, Mr. Dudugjian sought my assistance in the bankruptcy area on behalf of our clients, the Christensens." Declaration of John Maxey ¶ 4, Dckt.24; Alternative Direct Testimony Statement of John Maxey ¶ 4.

[7]   Bankr. E.D. Cal. Case No. 09-35065, Dckt. 8.

[8]   Exhibit 10.

1  jewelry and family heirlooms, which Soo Han Tse testified were
2  passed down from one generation to the next.    This unreturned
3  jewelry and family heirlooms were disposed of by the Christensens
4  on July 23, 2009, to pay a $1,000.00 obligation the Christensens
5  owed to Ria Tran ("Tran") for repair work done on the Christensens'
6  investment property.  Though learning within four days of using the
7  jewelry and heirlooms to pay their obligation to Tran that the
8  bankruptcy case had been filed and the Sheriff's Sale was void, the
9  Christensens made no attempt to recover that portion of the
10 Sheriff's Sale Property from Tran and pay their obligation with
11 monies or property of the Christensens.

12     In  addition  to  the  jewelry  and  heirlooms  which  the
13 Christensens disposed of to Tran, one Canadian Maple 1 oz gold coin
14 has not been returned to the Plaintiff-Debtors.    At trial, Bart
15 Christensen admitted that the Canadian Maple 1 oz gold coin had
16 been lost while in possession of the Christensens.

17     Based on the evidence, the court finds that the Christensens'
18 possession of the Sheriff's Sale Property was part of a strategy
19 they developed with The Attorneys to enhance their ability to
20 negotiate a settlement of other matters with the Plaintiff-Debtors.
21 As discussed further in this decision, no good-faith basis has been
22 shown for the Christensens retaining possession and control of the
23 Sheriff's Sale Property after July 27, 2009, and until March 23,
24 2011, depriving the Plaintiff-Debtors of that property.

25     On February 4, 2011, Bart Christensen physically delivered the
26 remaining Sheriff's Sale Property to The Attorneys.   Though they
27 had knowledge of the Bankruptcy Case for 20 months, The Attorneys
28 retained possession of the Sheriff's Sale Property for almost two

6

more months, not delivering what remained of the Sheriff's Sale Property to the Plaintiff-Debtors until March 23, 2011.

The Attorneys provided testimony as to the knowledge of its lawyers in the area of bankruptcy law and their active practice in this area for a number of years. As experienced bankruptcy practitioners, The Attorneys are familiar with the automatic stay imposed by 11 U.S.C. § 362(a). Notwithstanding the existence of the automatic stay and the Sheriff's Sale having been conducted in violation of the stay (thereby rendering the sale void),[9] the Christensens were instructed to and assisted by The Attorneys in retaining possession of the Sheriff's Sale Property in violation of the automatic stay.

The Plaintiff-Debtors' daughter, Manlin Auyeung, testified to the emotional distress of her parents, stating that her mother (Soo Han Tse) is depressed, cannot sleep, cries often and is mentally and emotionally stressed from the loss of the jewelry and family heirlooms. Further, she testified that the relationship between the Soo Han Tse and her daughter-in-law has become strained due to the loss of the jewelry.

Soo Han Tse, one of the Plaintiff-Debtors, testifies that she is very upset having lost these items of personal property, which had been passed down from her parents and grandparents so that they could be handed down to future generations. Further, that some of the personal property used by the Christensens to pay Tran belonged to the Plaintiff-Debtors' daughter-in-law (which she had obtained from her parents). These items were being held by the Plaintiff-

---

[9]  *Schwartz v. United States (In re Schwartz)*, 954 F.2 569, 571 (9th Cir. 1991); *In re Shamblin*, 890 F.2d 123 (9th Cir. 1989).

7

Debtors for safekeeping and their loss has strained the relationship between Soo Han Tse and her daughter-in-law.

Bart Christensen testified that he is a "retired annuitant" currently working 80 hours per month as an engineer for the State of California.[10]  Testimony was provided that Paula Christensen is a registered nurse.  The Plaintiff-Debtors describe the real estate transaction with the Christensens that underlies their debt as one in which the Christensens sought to conduct a tax-deferred 1031 exchange for other investment property owned by the Christensens. Bart Christensen testified that at the time of the Sheriff's Sale he and his wife lived in South Dakota and flew in for the sale and then flew back after the sale.  He further testified that the obligation that the Christensens owed to Tran related to work done by Tran on rental properties owned by the Christensens in California.

## PLAINTIFF-DEBTORS HAVE STANDING TO ENFORCE THE AUTOMATIC STAY AND RECOVER DAMAGES FOR VIOLATIONS OF STAY

Christensens first assert that the Plaintiffs are not the proper parties to pursue an adversary complaint because the Sheriff's Sale Property is not the asset of the Plaintiff-Debtors, but only of the bankruptcy estate.  In *Houston v. Eiler (In re Cohen)*, a leading Chapter 13 standing authority, the Bankruptcy Appellate Panel of the Ninth Circuit made clear that the allocation of duties between plaintiff-debtors and trustees in Chapter 13

---

[10]  A retired annuitant is a retired state employee who is allowed to receive his retirement benefits and work up to 80 hours a month, receiving payment for the 80 hours of service in addition to his or her retirement benefits.  Cal. Govt. Code § 21221.

bankruptcies is to be construed broadly.[11]    Section 1306(b) expressly provides that it is the Chapter 13 debtor who shall remain in possession of all property of the bankruptcy estate, unless otherwise ordered by the court or provided in the Chapter 13 plan.[12]  No such order was issued by the court, nor is there a plan provision otherwise dispossessing the Plaintiff-Debtors from their statutory mandate to retain, and have the right to possession of, all property of the bankruptcy estate.  In structuring the proper function of the Chapter 13 case, courts have confirmed that it is the Chapter 13 debtor who has the right to pursue and control causes of action belonging to the estate.[13]  As such, not only do the Plaintiff-Debtors have standing to assert causes of action pursuant to 11 U.S.C. § 362(a) and (k), they also have standing to assert nonbankruptcy causes of action owned by the estate.[14]

Defendants cite *Moneymaker v. CoBen (In re Eisen),* 31 F.3d 1447, 1451 (9th Cir. 1994), to support their assertion that the Plaintiff-Debtors do not have standing in the present case – however, *Moneymaker* involves a Chapter 7 trustee.  In a Chapter 7 bankruptcy case, the trustee is the representative of the debtor's

---

[11]   *Houston v. Eiler (In re Cohen)*, 305 B.R. 886, 894 (B.A.P. 9th Cir. 2004); *see also* 3 COLLIER ON BANKRUPTCY ¶ 323.04 (Alan N. Resnick & Henry J. Sommer eds. 16th ed.) (Chapter 13 Plaintiff-Debtors have standing to bring claims in their own name on behalf of the bankruptcy estate).

[12]   8 COLLIER ON BANKRUPTCY ¶ 1306.03.

[13]   *See Donato v. Metro. Life Ins. Co.*, 230 B.R. 418, 425 (N.D. Cal. 1999); *Kelsey v. Waste Management of Alameda County*, 76 Cal. App. 4th 590, 595-596 (1999).

[14]   *Houston*, 305 B.R. at 900.

9

estate and thus has the capacity to sue and be sued.[15]   The cited case is not relevant in the Bankruptcy Case which is now before the court as the trustee and the debtor play a different role in a Chapter 13 case.   The Chapter 13 debtor retains control of the bankruptcy estate and thus may pursue and control causes of actions belonging to the estate.   Defendants do not cite any other case law to support their position.   The Plaintiff-Debtors in The Bankruptcy Case are proper parties to pursue an adversary proceeding concerning  property of the estate.

### THE CHRISTENSENS, WITH THE ASSISTANCE AND ADVICE OF THE ATTORNEYS, INTENTIONALLY VIOLATED THE AUTOMATIC STAY

A stay violation is willful if a creditor has knowledge of the bankruptcy filing and deliberately acts in such a way that violates the stay.[16]   Once the creditor learns or has notice of a bankruptcy case having been filed, any actions that it intentionally undertakes are deemed wilful.[17]   As the Ninth Circuit Court of Appeals explained:[18]

> A "willful violation" does not require a specific intent to violate the automatic stay.   Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated

---

[15]   11 U.S.C. §§ 704(a)(1), 725.

[16]   *In re Preston*, 333 B.R. 346, 348-9 (Bankr. M.D.N.C. 2005).

[17]   *In re Risner*, 317 B.R. 830, 835 (Bank. D. Idaho 2004); *see also Eskanos and Adler, P.C. v. Leetien*, 309 F.3d 1210, 1215 (9th Cir. 2002); *Thompson v. GMAC, LLC*, 566 F.3d 699, 702-3 (7th Cir. 2009); *Emp't. Dev. Dept. v. Taxel (In re Del Mission Ltd.)*, 98 F.3d 1147, 1151 (9th Cir. 1996) (holding that the knowing retention of estate property violates the automatic stay).

[18]   *Goichman v. Bloom (In re Bloom)*, 875 F.2d 224, 227 (9th Cir. 1989) (citing *INSLAW, Inc. v. United States (In re INSLAW, Inc.)*, 83 B.R. 89, 165 (Bankr. D.D.C. 1988)).

10

the stay were intentional.  Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded.

Defendants argue that the violation of the automatic stay was not intentional because they did not know of the bankruptcy at the time of the Sheriff's Sale.  Defendants admittedly had notice of the bankruptcy on July 27, 2009, The Attorneys filed a request for special notice on July 28, 2009, and filed a proof of claim in the bankruptcy case on November 25, 2009.  Defendants knew of the bankruptcy proceeding, and thus the automatic stay, on July 27, 2009, when they conferred with their attorneys.  Even though they knew of the bankruptcy case, knew the Sheriff's Sale was void, and knew that the Sheriff's Sale Property belonged to the bankruptcy estate and the Plaintiff-Debtors (to the extent of any exemptions) as early as July 27, 2009, the Christensens intentionally chose not to return the Sheriff's Sale Property to the Plaintiff-Debtors until March 23, 2011.

During the period from July 27, 2009, through March 23, 2011, the Christensens were represented by experienced bankruptcy counsel who were well aware of the automatic stay, the impact of the automatic stay, and that the Christensens' retention of Sheriff's Sale Property obtained in violation of the stay was a continuing violation of the automatic stay.  Bart Christensen testifies that even after the Christensens and The Attorneys were aware of the Bankruptcy Case, The Attorneys instructed the Christensens to retain possession of the Sheriff's Sale Property obtained in violation of the automatic stay while The Attorneys attempted to settle other matters with the Plaintiff-Debtors.  Knowingly holding

11

property from a debtor in bankruptcy is a violation of the automatic stay.[19]   The court finds that the retention of this personal property was an intentional, knowing act by the Christensens and their attorneys not only to retain possession of the Sheriff's Sale Property, but to do so in violation of the automatic stay as part of the Christensens' strategy relating to their bankruptcy claim and other disputes with the Plaintiff-Debtors.

John Maxey provided troubling testimony at trial in an effort to exculpate the Christensens.   On cross examination Mr. Maxey testified that nether Robert Dudugjian nor Bart Christensen advised him that the Christensens were retaining possession of the Sheriff's Sale Property.   Mr. Maxey testified that he communicated for over a year and engaged in settlement negotiations with Plaintiff-Debtors' counsel purportedly unaware that the Christensens were continuing in possession of the Sheriff's Sale Property with knowledge of the Bankruptcy Case.   Taken as true, then the Christensens and Robert Dudugjian intentionally hid from Mr. Maxey this key piece of information for his dealings with Plaintiff-Debtors' counsel.   While affording Mr. Maxey with "plausible deniability" as to any statements he made asserting that the Christensens were not in possession of the Sheriff's Sale Property, such conduct resulted in Mr. Maxey making false statements to the Plaintiff-Debtors and Plaintiff-Debtors' counsel.

---

[19]   *Taxel*, 98 F.3d at 1151.

12

This demonstrates a lack of good faith in the conduct of the Christensens in the bankruptcy case.[20]

### Failure to Correct a Violation of the Automatic Stay is a Violation of the Automatic Stay

The Christensens, notwithstanding being represented by knowledgeable bankruptcy counsel, argue that since they did not know that they were violating the automatic stay when the Sheriff's Sale occurred, then their continued possession of the personal property obtained in violation of the automatic stay for almost two years is not a violation of the stay. Alternatively, Christensens contend that if continued possession of the personal property is a violation of the automatic stay, it was not an "intentional violation of the stay" because they only retained the personal property for two years for "safekeeping" as instructed by their attorneys.  These arguments are without merit.  The testimony of Bart Christensen establishes that he and Robert Dudgjian knew of the bankruptcy filing as of July 27, 2009, that he and Robert Dudgjian made the conscious decision to retain the personal

---

[20]   In addition to hiding the existence of this property of the estate from the Plaintiff-Debtors, it appears that the Christensens and their counsel engaged in a pattern of conduct to hide the existence of this property of the estate from the court. Though knowing that the Sheriff's sale was conducted in violation of the automatic stay and void, the Christensens failed to disclose the existence of the personal property in their possession in the proof of claim filed on November 25, 2009 — four months after the Christensens and their attorney learned of the bankruptcy case having been filed. Reference is only made to a judgment lien on real property.  To the extent that the Christensens believed that they had the right to retain possession of the personal property to secure the claim by virtue of any execution lien (given they and their experienced bankruptcy counsel had to reasonably know that they did not own the personal property because the Sheriff's sale was void), it was required to be disclosed.

13

property obtained in violation of the automatic stay, and that The Attorneys instructed the Christensens to retain possession of the Sheriff's Sale Property obtained in violation of the automatic stay. Retaining possession of the Sheriff's Sale Property resulted in the Christensens depriving the Plaintiff-Debtors and estate of that property.

"The automatic stay requires a creditor to maintain the status *quo ante* and to remediate acts taken in ignorance of the stay."[21] The automatic stay imposes an affirmative duty to discontinue actions in violation of the stay.[22] A creditor cannot use the state court enforcement action as leverage in negotiations once the bankruptcy case has been commenced.[23]

When property of the estate is held in violation of the automatic stay the onus is on the creditor to turn over the property, not for the debtor, debtor-in-possession, Chapter 7 trustee, or Chapter 11 trustee to chase the creditor and force correction of the continuing violation.[24] "The responsibility is placed on the creditor to address the continuing violation of the automatic stay because to place the burden on the debtor to undo the violation 'would subject the debtor to the financial pressures

---

[21]    *Franchise Tax Bd. v. Roberts (In re Roberts)*, 175 B.R. 339, 343 (B.A.P. 9th Cir. 1994).

[22]    *Sternberg v. Johnson*, 595 F.3d 937, 944 (9th Cir. 2010); *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1215 (9th Cir. 2002) (addressing the obligation to discontinue post-petition collection proceedings).

[23]    *Eskanos & Alder*, 309 F.3d at 1215.

[24]    *Taxel*, 98 F.3d at 1151.

14

the automatic stay was designed to temporally abate.'"[25]

The Christensens retaining possession of the Sheriff's Sale Property with knowledge of the Bankruptcy Case during the period from July 27, 2009, until March 23, 2011, was a continuing, knowing, and intentional violation of the automatic stay. Compounding this violation is that the Christensens did so with the assistance, advice, and instructions of their knowledgeable, experienced counsel as part of their larger strategy to settle other issues involving the Plaintiff-Debtors.

## THE CHRISTENSENS ARE LIABLE FOR
## DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY

The granting of compensatory damages for violation of the automatic stay is to restore the *status quo* and grant the injured party the value of its loss.[26] The court properly awards a debtor the value of her property which was sold in contravention of the automatic stay and her reasonable attorney's fees and expenses caused by the violation.[27] The fact that a creditor may have originally acted in good faith and reasonably believed that its conduct did not violate the automatic stay does not insulate the creditor from the court finding the conduct willful or allow the creditor to avoid damages.[28]

---

[25] *Johnson v. Parker (In re Johnson)*, 321 B.R. 262, 283 (D. Ariz. 2005) (citation omitted).

[26] *Walters v. Hatcher (In re Walters)*, 41 B.R. 511, 516 (Bankr. W.D. Mo. 1984).

[27] *In re Brooks*, 12 B.R. 283, 285-286 (Bankr. W.D. Mo. 1981).

[28] *In re Cordle*, 187 B.R. 1, 4 (N.D. Cal. 1995).

15

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.
>
> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

H. Rpt. No. 95-595, at 340 (1977), *reprinted in* Vol. C COLLIER ON BANKRUPTCY App. Pt. 4(d)(i), at App. Pt. 4-1472 (Alan N. Resnick & Henry J. Sommer eds. 16th ed.).   The stay also works to protect creditors, allowing for the proper treatment of claims under the Bankruptcy Code.[29]

The effect and scope of the automatic stay does not depend on either a legal or equitable interest of the debtor or estate.[30] Bankruptcy Code § 362(a)(3) states that the automatic stay applies to, "any act to obtain *possession of property of the estate or of property from the estate* or to exercise control over property of the estate." (Emphasis added).   "The operation of the automatic stay applies to property merely in the debtor's possession at the

---

[29]  *Boucher v. Shaw*, 572 F.3d 1087, 1093 (9th Cir. 2009); *see also Hillis Motors v. Haw. Auto. Dealers' Ass'n (In re Hillis Motors)*, 997 F.2d 581, 586 (9th Cir. 1993) ("The [automatic] stay ensures that all claims against the debtor will be brought in a single forum, the bankruptcy court.   The stay protects the debtor by allowing it breathing space and also protects creditors as a class from the possibility that one creditor will obtain payment on its claims to the detriment of others." (citations omitted)).

[30]  *In re Zartun*, 30 B.R. 543, 545, (B.A.P. 9th Cir. 1983).

16

time of filing, and remains in effect until and unless the debtor abandons such property or relief from the stay is sought."[31]

The Christensens contend that not all the property sold at the Sheriff's Sale were assets of the Plaintiff-Debtors but rather some were the Plaintiff-Debtors' daughter's property. The Statements filed by the Debtors do not indicate that they were holding property for anyone else.[32] However, at trial, Soo Han Tse testified that some of the Sheriff's Sale Property belonged to her daughter-in-law, but was in the Plaintiff-Debtors' possession. To the extent that the Plaintiff-Debtors were in possession of property of the daughter-in-law (for which the court has not been provided sufficient evidence to determine that any of the Sheriff's Sale Property was not property of the Plaintiff-Debtors and property of the estate), obtaining possession of and depriving possession of that property from the Plaintiff-Debtors and estate is a violation of the automatic stay.

Additionally, the court will not presume, as the Christensens now contend, that the Sheriff, the Christensens, Robert Dudugjian, and The Attorneys attempted to sell personal property belonging to another in enforcing the judgment that the Christensens had against the Plaintiff-Debtors. The California Code of Civil Procedure specifies a process by which a third party who believes that the property levied upon by the Sheriff belongs to them and not the

---

[31]   *Turbowind, Inc. v. Post Street Management, Inc.* 42 B.R. 579, 585 (S.D. Cal. 1984).

[32]   Statement of Financial Affairs, Question 14; Bankr. E.D. Cal. No. 09-35065, Dckt. 1 at 40.

17

judgment debtor asserts their rights.[33]   The evidence presented by the Christensens is that no third parties availed themselves of such rights and asserted ownership of any of the personal property pursuant to these provisions of California Law.

**The Retention of the Sheriff's Sale Property From July 27, 2009, through March 23, 2011, Was a Continuing Violation of the Automatic Stay by the Christensens**

The Christensens argue that their continuing possession of the Sheriff's Sale Property could not violate the automatic stay because they did not have knowledge of the Bankruptcy Case when they purchased the property at the Sheriff's Sale.  Apparently the Christensens believe that they had no obligation to immediately comply with the automatic stay when they learned of the Bankruptcy Case.   It is undisputed that the Christensens learned of the bankruptcy four days later on July 27, 2009, in the phone conversation with Robert Dudugjian.  At that time the Christensens and The Attorneys knew that the Sheriff's Sale and the Christensens' possession of the Sheriff's Sale Property were in violation of the automatic stay.   Further, they knew that the Christensens retaining the Sheriff's Sale Property was a continuing violation of the automatic stay.   The Christensens and The Attorneys (who took possession of the Sheriff's Sale Property for two months) continued to violate the automatic stay by retaining possession of the Sheriff's Sale Property with full knowledge of the Bankruptcy Case until March 23, 2011.

Additionally, with full knowledge that the Sheriff's Sale was invalid and they had no right to use a portion of the personal

---

[33]   *See* Cal. Civ. Proc. Code §§ 720.010 *et. seq.*

1   property to pay a debt the Christensens owed to Tran, the
2   Christensens made no effort to recover that personal property
3   (which was valued at $1,000.00) from Tran.   No explanation was
4   provided as to why the Christensens did not, upon learning of the
5   bankruptcy case filing only four days after delivering the personal
6   property to Tran, immediately contact Tran, explain that the
7   Christensens and Tran were in violation of the automatic say,
8   recover the jewelry and family heirlooms, and pay Tran from money
9   belonging to the Christensens.

10      As this court has stated on a number of occasions, the depth
11  and breadth of a person's conduct are not measured only by an
12  improper act, but what they do to correct that improper act once it
13  is brought to their attention.   Bankruptcy by its very nature is a
14  redemptive process, which can equally be applied to creditors and
15  debtors.   Those acting in good faith will act promptly to correct
16  the error and avoid a continuing violation of the law.

17      In this case, the Christensens and The Attorneys have
18  demonstrated that rather than seeking to act in good faith and
19  correct what may well have been an inadvertent violation of the
20  automatic stay, they engaged in an intentional strategy to continue
21  to violate the stay.   Counsel may have hoped, and the Christensens
22  gambled, that the Plaintiff-Debtors would fail to prosecute the
23  Bankruptcy Case, that failure resulting in the Bankruptcy Case
24  being dismissed, and the continuing violation of the automatic stay
25  by the Christensens not being brought to the attention of the
26  court, Chapter 13 Trustee, U.S. Trustee, and other parties in
27  interest.   Alternatively, the Christensens and The Attorneys may
28  have hoped that nobody would really care what happened, because the

violation "only" involved bankruptcy debtors who owed the debt. Whatever the reason, the Christensens and counsel chose poorly in selecting this strategy.

The Christensens knowingly and intentionally violated the automatic stay. Not only did they retain possession of and use a portion of the personal property improperly obtained at the void Sheriff's Sale to the detriment of the Plaintiff-Debtors, but have also violated the stay as to their fellow creditors. Damages are properly awarded pursuant to 11 U.S.C. § 362(k) against the Christensens.

### THE CONVERSION CLAIM DAMAGES ARE DUPLICATIVE OF THE CLAIM FOR VIOLATION OF THE AUTOMATIC STAY

In this Adversary Proceeding, the conversion damages overlap and are subsumed by the damages for violation of the automatic stay. Under California law a conversion claim arises from the wrongful exercise of dominion over personal property of another. A person may seek damages for conversion or the specific recovery of the property and damages for its wrongful detention.[34] Because the damages are the same as those which are to be awarded pursuant to 11 U.S.C. § 362(k) for the violation of the stay, damages on the state law claim would be duplicative of the damages for violation of the automatic stay.

Further, violation of the automatic stay is an issue of federal law to be exclusively determined by the federal court. This is similar to claims for a party violation the discharge

---

[34] *See* generally, 5 E.B. WITKIN, SUMMARY OF CALIFORNIA LAW § 699 *et. seq.* (10th ed. 2005).

20

injection under 11 U.S.C. § 524.[35]   The mere violation of the discharge injunction or automatic stay is not, in and of itself, the basis for asserting a claim under a nonbankruptcy legal theory. The Plaintiff-Debtors have not asserted any other conduct as the basis for the conversion, reason why the retention of the Sheriff's Sale Property was improper, or any further damages beyond the scope of damages also awarded pursuant to 11 U.S.C. § 362(k).

**COMPUTATION OF DAMAGES**

Under the Bankruptcy Code, "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages."[36]   The basic measure of damages is the amount of economic loss the debtor has suffered as the proximate result of the defendant's violation, taking into account the fair market value of the property that was disposed of in violation of the automatic stay.[37]

Owners are competent to render an opinion on the value of their property.[38]   "All that is required to testify concerning the value of property is some acquaintance with it sufficient to form an estimate value; it is then up to the Court to determine how much weight to attach to the estimate."[39]   Once a party has proven that

---

[35]   *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502 (9th Cir. 2002).

[36]   11 U.S.C. § 362(k)(1).

[37]   *In re Kaufman*, 315 B.R. 858, 866 (N.D. Cal. 2004).

[38]   *In Re Geyer*, 203 B.R. 726, 728 (S.D. Cal. 1996).

[39]   *Wells Fargo Bank & Union Trust Co. v. United States*, 115 F. Supp. 655, 661 (N.D. Cal. 1953).

he has been damaged from an automatic stay violation, he or she needs to show the amount of damages with reasonable certainty.[40]

One method of valuing the personal property is what it sold for at the Sheriff's Sale — the $8,000.00 paid by the Christensens. While not a perfect marketplace sale — in which a willing buyer and willing seller, neither operating under a compunction to buy or sell, would determine the sales price — it is a form of a market.[41] This corresponds to the $8,000.00 value for the personal property stated by the Plaintiff-Debtors in Schedule B filed in their Chapter 13 case. The court finds that the Sheriff's Sale Property had a value of $8,000.00 as of July 23, 2009.

The personal property paid by the Christensens to Tran was valued between the Christensens and Tran to be $1,000.00. No effort was made by the Christensens to recover the property given to Tran when the Christensens learned on July 27, 2009, that the Plaintiff-Debtors had filed the Chapter 13 case prior to the Sheriff's Sale. The court has not been presented with sufficient evidence to the contrary and finds that the personal property given by the Christensens to Tran from the Sheriff's Sale Property had a value of $1,000.00 at the time of the July 23, 2009 transfer.

For the other unreturned property, the lost Canadian Maple 1 oz gold coin, under California law when property that is improperly taken (a conversion) cannot be returned, the aggrieved

---

[40]   *In re Heghmann*, 316 B.R. 395, 405 (B.A.P. 1st Cir. 1994) (citing *Doe v. United States*, 976 F.2d 1071, 1085 (7th Cir. 1992)).

[41]   The classic definition of "fair market value" is "the price that a willing buyer would pay a willing seller, neither being under a compulsion to sell or buy." *Jefferson Ins. Co. V. Superior Court of Alameda County*, 3 Cal. 3d 398, 402 (1970).

22

1   party is entitled to the value of the property at the time of the
2   conversion or an amount which is sufficient to compensate for the
3   loss which is the natural, reasonable and proximate result of the
4   wrongful act.[42]    In setting the value of the property, it is the
5   date of the conversion which the court uses to determine the
6   damages, notwithstanding that the price may fluctuate.[43]    This
7   computation of damages is consistent with and included in the award
8   of actual damages pursuant to 11 U.S.C. § 362(k)(1).

9       Bart Christensen on direct testimony admitted that one of the
10  gold coins that he acquired at the Sheriff's Sale was not included
11  in the property which his attorneys returned to the Plaintiff-
12  Debtors.   The appropriate value of the missing gold coin which has
13  been converted is determined as of the date of conversion – which
14  the court determines to be July 23, 2009 (the date of the Sheriff's
15  Sale).   Pursuant to Federal Rule of Evidence 201, the Court takes
16  judicial notice that the value of gold on July 23, 2009 was $947.32
17  per ounce.[44]   This is consistent with the $905.00 value of the gold
18  coin as of July 21, 2009, asserted by the Christensens.   Given the
19  volatility of gold prices, which have generally been upward during
20  the period relevant to this Adversary Proceeding, the increase
21  several days later is not unexpected.   The court determines that

---

[42]   Cal. Civ. Code § 3336.

[43]   *Wong v. Paine, Webber, Jackson & Curtis*, 208 Cal. App. 2d 17,
19-20 (1939) (addressing 1931 amendment to California Civil Code
§ 3336 deleting the right of the plaintiff to have the value
determined at the time of conversion or any time thereafter up to
trial).

[44]   Devon Maylie, *Precious Metals: Spot Gold Up But At Mercy of
Dollar Moves*, Dow Jones Newswires (July 24, 2009, 9:46 AM).

the Canadian Maple 1 oz gold coin which was not returned to the Plaintiff-Debtors by the Christensens had a value of $947.32 as of July 21, 2009.

Actual damages for the unreturned items of personal property (those used by the Christensens to pay their personal obligation to Tran and the lost gold coin) total $1,947.32. The court grants judgment in the amount of $1,947.32 for the Plaintiff-Debtors against the Christensens, and each of them.

**Emotional Distress Damages are Property Awarded to Soo Han Tse**

The Plaintiff-Debtors have also been deprived the use of these items of personal property for the period of almost two years. Testimony has been provided that this loss of use has caused anxiety to Soo Han Tse because the personal property used by the Christensens to pay their personal obligation included jewelry belonging to the Plaintiff-Debtors' daughter-in-law. Soo Han Tse also provided her testimony as to the loss of the family heirlooms which had been handed down from generation to generation, the emotional distress caused by the Christensens denying that they were in possession of the personal property for two years, and the Christensens having used the family heirlooms to pay their personal obligation.

Actual damages for violation of the automatic stay include emotional distress damages.[45] For a debtor to state a claim for emotional distress damages, the individual must (1) suffer significant harm, (2) clearly establish the significant harm, and (3) demonstrate a causal connection between the significant harm

---

[45] *Dawson v. Wash. Mut. Bank* (*In re Dawson*), 390 F.2d 1139, 1148 (9th Cir. 2004).

24

1  and the violation of the automatic stay.[46]   Medical evidence of
2  emotional distress is not required; the testimony of family
3  members, friends, and co-workers is sufficient to establish an
4  emotional distress claim.[47]  In some cases no corroborating evidence
5  is required.  An example cited in *Dawson* is where the egregious
6  conduct was the creditor pretending to hold a gun to the debtor's
7  head.[48]  Additionally, the court in *Dawson* stated that even when the
8  conduct was not egregious, the court could award emotional distress
9  damages where the circumstances make it obvious that a reasonable
10  person would suffer emotional harm, such as the emotional distress
11  of having to cancel a child's birthday party because the debtor's
12  checking account was frozen.[49]

13      Manlin Auyeung and Soo Han Tse each provided testimony in
14  support of the emotional distress claim.  This testimony as to the
15  emotional distress focuses on the Christensens having taken and
16  disposed of family heirlooms passed down from generation to
17  generation.  Manlin Auyeung testified to the emotional distress of
18  her parents, stating that her mother is depressed, cannot sleep,

---

[46]  *Id.* at 1149.

[47]  *Id.*, citing *Varela v. Ocasio (In re Ocasio)*, 272 B.R. 815,
821-22 (B.A.P. 1st Cir. 2002) (holding that testimony of debtor's wife
was sufficient to support an award of medical damages without medical
testimony).

[48]  *Dawson*, 390 F.2d at 1149 (citing *Wagner v. Ivory (In re
Wagner)*, 74 B.R. 898, 905 (Bankr. E.D. Pa. 1987)).

[49]  Dawson, 390 F.2d at 1149 (citing *United States v. Flynn (In re
Flynn)*, 185 B.R. 89, 93 (S.D. Ga. 1995) ($5,000.00 award of emotional
distress damages because 'it is clear that the appellee suffered
emotional damages' when she was forced to cancel her son's birthday
party because her checking account was frozen)); *see also Sternberg*,
595 F.3d at 943.

cries often, and is mentally and emotionally stressed over the loss of these items of personal property. Even if not substantial in gross dollar value, the loss of such family "treasures" is something which will clearly cause emotional distress. This distress is separate and apart from the Plaintiff-Debtors having filed bankruptcy or the Christensens having a judgment against them. The intentional disregard of the stay and the rights of the Plaintiff-Debtors and estate over a substantial period of time would emotionally affect a reasonable person. A reasonable person would be emotionally injured by the selling of a portion and the continued detention of the remaining Sheriff's Sale Property and holding of such items.

This reasonable distress suffered by Soo Han Tse has been compounded by the Christensens and The Attorneys misrepresenting for more than one and one-half years that the Christensens were not in possession of any of the Sheriff's Sale Property.[50] Based on the testimony presented by the Christensens, the withholding of the personal property was done as part of a broader strategy to obtain settlement of other issues with the Plaintiff-Debtors. The court has been presented with sufficient testimony, as well as the court being able to independently conclude, that the improper retention and use of the personal property to pay the personal obligation of the Christensens (and no attempt to recover those items when the

---

[50] The Christensens complain that this Adversary Proceeding could not be settled because the Plaintiff-Debtors have continued to demand that the Christensens return personal property which has now been stated to either be lost (the gold coin) or used by the Christensens to pay Tran and not recoverable. This inability to settle the matter may well arise from the Plaintiff-Debtors not believing the latest version of what property was in the Christensens possession given the history of misrepresentation on that point.

Christensens learned of the bankruptcy four days later) are actions of the Christensens which would make a reasonable person suffer emotional distress.

Based on the evidence presented, the court awards Soo Han Tse $1,550.00 in emotional distress damages against the Christensens, and each of them.

**Plaintiff-Debtors are Entitled to Compensation for the Time Value of Being Deprived of the Sheriff's Sale Property**

For a conversion, "California Civil Code section 3336 provides that a plaintiff is entitled in a conversion action to the prejudgment interest at the legal rate from the time of conversion to the date judgment is entered . . . . The legal rate of interest in California is 7 percent per annum."[51] Prejudgment interest is awarded in federal court to compensate a party for the lost opportunity to use his or her money between the time a claim accrues and the time of judgment.[52]

There is no statutory rate for prejudgment interest in federal court, leaving it to the court to determine based upon the particular circumstances of the case.[53] The trial court is to set a prejudgment rate which compensates the plaintiff for the loss suffered from the time the claim arose, but the amount is not

---

[51] *Stan Lee Trading, Inc. v. Holtz*, 649 F. Supp. 577, 582 (C.D. Cal. 1986) (claims not based on breach of contract); *see also* Cal Civ. Code § 3289 (providing for prejudgment interest at contract rate or 10% if no interest provided in the contract.)

[52] *West Virginia v. United States*, 479 U.S. 305 (1987).

[53] *Cement Div., National Gypsum Company v. City of Milwaukee*, 144 F.3d 1111, 1113 (7th Cir. 1998).

27

intended to punish the defendant.[54]

Almost half of the monetary obligation is for the Canadian Maple 1 oz. gold coin, for which the price of gold was $947.32 per ounce on July 23, 2009. However, the price of gold has dramatically increased, and the failure of the Christensens to return the gold coin or pay amount owing for it as of July 2009 has caused a significant loss to the Plaintiff-Debtors. By 2011 the price of gold had increased to $1,571.53 an ounce, a 66% increase. However during this same period the cost of borrowing money has been at a historic low, with home mortgage rates dropping in the 3% to 5% range and the Federal one-year note rates dropping below 1%.

Under the circumstances of this Adversary Proceeding and the claims asserted herein, the court adopts a 7% prejudgment interest rate that applies in state court. This amount is reasonably expected by all the parties, and the Plaintiff-Debtors have not shown the basis for a higher rate. Using a lower interest rate does not provide the Plaintiff-Debtors with fair compensation for being deprived of this property prior to judgment. This is true especially for an item such as the gold coin, which during this period has risen rapidly in value. If provided with the value of the coin in 2009, the Plaintiff-Debtors could have acquired a replacement asset and realized a much greater value during this period. Though this rate may allow the Christensens to have significantly benefitted from their violation of the automatic stay with whatever has or will happen with the currently lost coin, the

---

[54] *Dishman v. UNUM Life Insurance Company of America*, 269 F.3d 974, 989 (9th Cir. 2001) (rejecting an interest rate which was twice the return on the investment portfolio from which the payment in dispute was owing).

court's computation is for the loss to the Plaintiff-Debtors, not punishing the Christensens. The 7% interest rate fairly compensates the loss to the Plaintiff-Debtors for the failure of the Christensens to return the gold coin and other items they did not recover from Tran.

Nine hundred seventy-one days have passed since July 23, 2009, the date of conversion, and March 18, 2012, when the court prepared this decision. The interest is computed, at 7% per annum on $1,947.32 ($1,000.00 for items sold and $947.32 for the missing gold coin) is $362.63. The court has determined not to award prejudgment interest on the emotional distress damages or the attorneys' fees damages.

**Plaintiff-Debtors are Entitled to Reasonable Attorneys' Fees as Part of the Actual Damages in Correcting the Violation of the Automatic Stay**

Bankruptcy Code § 362(k)(1), allows an injured party to be awarded damages of the entire amount of actual damages reasonably incurred as a result of a violation of the automatic stay, which includes attorneys' fees.[55] In deciding what constitutes "reasonable," the courts in this Circuit have adopted the principles found in Bankruptcy Code § 330 as a guide for awarding attorney fees.[56] An award of attorneys' fees relating to a violation of the automatic stay will be "reasonable" provided it is supported by evidence and not "grossly excessive, monstrous, or

---

[55] *Stainton v. Lee (In re Stainton)*, 139 B.R. 232, 235 (B.A.P. 9th Cir. 2007).

[56] *In re Roman*, 283 B.R. 1, 11 (B.A.P. 9th Cir. 2002).

shocking to the conscience."[57]

Allowable attorneys' fees relating to violation of the automatic stay are those relating to correcting the violation of the automatic stay (such as recovering property), but do not include attorneys' fees in pressing an adversary proceeding for damages arising from violation of the automatic stay.[58]   Once the violation of the stay has ended, i.e. the violating creditor (or the court) has unwound the violation to the extent possible, no further right to attorneys' fees exists.

In this Adversary Proceeding, the Christensens returned all of the remaining personal property to the Plaintiff-Debtors on March 23, 2011.  While very belatedly, this property was returned to the Plaintiff-Debtors and the continuing violation of the automatic stay terminated.  Though the Plaintiff-Debtors may not believe the Christensens' statements that the gold coin is lost or that the jewelry and family heirlooms given to Tran are out of the Christensens' control, the court has no basis for concluding that the Christensens are continuing in violation of the automatic stay. From March 24, 2011, onward, the Plaintiff-Debtors were pursuing only their monetary claim for the personal property improperly obtained in violation of the automatic stay which could not be returned (and for which the Christensens made no effort to recover when they learned of the bankruptcy case four days after giving the personal property to Tran to pay their personal obligation).

---

[57]   *In re Computer Communications, Inc.*, 824 F.2d 725, 731 (9th Cir. 1987).

[58]   *Sternberg*, 595 F.3d at 947-48.

Peter Macaluso, counsel for the Plaintiff-Debtors, has provided his Declaration asserting that the Plaintiff-Debtors have incurred $7,500.00 in legal fees for 25 hours of work at $300.00 an hour. Mr. Macaluso provides the following breakdown for his fees relating to the violation of the automatic stay.

> 5.0 Hours: Letters to Opposing Counsel Demanding Property be Returned
>
> 1.0 Hour:  Phone Conversations
>
> 5.0 Hours: Research and Preparing the Complaint
>
> 4.0 Hours: Preparing and Appearing at Status Conference
>
> 10.0 Hours: Preparing for Trial
>
> Total: 25 Hours x $300.00 an hour = $7,500.00

Mr. Macaluso has not provided the court with any contemporaneous billing records for the time expended. In reviewing the court docket for this Adversary Proceeding, as of March 23, 2011, the court had heard and ruled on a summary judgment motion filed by the Plaintiff-Debtors. No fees are requested for and no fees are allowed by the court relating to the summary judgment motion. Though announcing that the ruling was against the Plaintiff-Debtors at the March 17, 2011 hearing on the summary judgment, within a week thereafter the Christensens delivered possession of the personal property they had retained to the Plaintiff-Debtors. [59]

---

[59]   The Christensens argue that since January 2011 they were attempting to return the personal property, but insisted that they would only do so to the Chapter 13 Trustee. It is asserted that only after the court disagreed with Christensens' counsel's view that the property should be turned over to the Chapter 13 Trustee that the Christensens turned over possession out of respect for the court.
(continued...)

31

1    The 10 hours of time spent in preparing for trial and
2 additional time for trial are not recoverable attorneys' fees
3 pursuant to 11 U.S.C. § 362(k). They occurred well after the
4 March 23, 2011 return of the personal property which remained in
5 the possession of the Christensens. The Pretrial Conference
6 (referenced as the Status Conference in the Macaluso declaration)
7 occurred on April 5, 2011. The detailed Pretrial Conference
8 Statement was due from the Plaintiff-Debtors not later than seven
9 days prior to the Pretrial Conference (March 29, 2011). Return of
10 the personal property on March 23, 2011, was not sufficiently in
11 advance for the Plaintiff-Debtors to avoid all of the costs of
12 preparing for the Pretrial Conference relating to the recovery of
13 the personal property. It was sufficiently in advance that the
14 actual Pretrial Conference related only to the damages claim, for
15 which no right to recovery of attorneys' fees exists under
16 11 U.S.C. § 362(k). The court deducts the one hour of time for
17 attendance at the Pretrial Conference and one hour of preparation
18 to account for the March 23, 2011 return of the personal property.

19

20        [59](...continued)
21 Alt. Dir. Test. Statement of Edward Smith, 4:23-27. Given that the
Chapter 13 Trustee does not take possession of property of the estate,
and that throughout the bankruptcy case and adversary proceeding the
22 Christensens were represented by experienced, knowledgeable bankruptcy
counsel, the court rejects this contention. The court also does not
23 find it credible that the Christensens continued to retain possession
of the personal property in a belief that it should be given to the
24 Chapter 13 trustee. Not only does experienced, knowledge bankruptcy
counsel know that not to be the case, to the extent that there was any
25 question, knowledgeable, experienced bankruptcy counsel would have
filed a motion with the court for an order allowing the Christensens
26 to correct their continuing violation of the stay by obtaining an
order as to whom the personal property should be delivered. The
27 Christensens did not do so, instead continuing to retain possession
which they had their attorney attempt to settle other matters with the
28 Plaintiff-Debtors.

32

The court determines that attorneys' fees of $3,900.00 is reasonable as they relate to the recovery of the personal property and stopping the continuing violation of the automatic stay by the Christensens. While the other attorneys' fees may be reasonable, they are not recoverable as they relate to prosecution of the damages claim after what remained of the personal property.

In considering the specific tasks identified by counsel, the time billed for those tasks, and the total charges for the tasks, the court determines that the tasks were necessary and the aggregate charges for the tasks are reasonable (both hours spent and hourly rate charged). For this adversary proceeding, the services provided, and the issues addressed, the hourly rate of $300.00 requested by counsel is appropriate for the issues and proceedings before the court.[60] The court has the benefit of having the respective counsel for the battling parties appear before it in this Adversary Proceeding, observed the interaction between the parties and counsel, and considered the pleadings filed in this case. All of this has been taken into account in making the determination of allowed attorneys' fees.

The court awards the Plaintiff-Debtors $3,900.00 in attorneys' fees for the services provided by counsel during the period of the continuing violation of the automatic stay against the Christensens, and each of them. No attorneys' fees are awarded for

---

[60] The common method used to determine an award of attorneys' fees commonly is made using the lodestar rate method by which the court determines the reasonable hourly rate for counsel, considering the services provided, and reasonable time which would be expended in prosecuting the case. *See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001). The court's computation of attorneys' fees in this case based on the reasonable time and reasonable hourly billing rate for the legal services.

33

the services provided after the Christensens returned the Sheriff's Sale Property to the Plaintiff-Debtors.

### THE CONDUCT OF THE CHRISTENSENS SUPPORTS
### AN AWARD OF PUNITIVE DAMAGES

An individual injured by any willful violation of a stay provided by this section may, in addition to compensatory damages, also be awarded punitive damages.[61] Although 362(k) permits the recovery of such damages "in appropriate circumstances," the Ninth Circuit has cautioned that punitive damages are only appropriate if there has been some showing of reckless or callous disregard for the law or rights of others.[62] The bankruptcy court has considerable discretion in granting or denying punitive damages under 362(k).[63] Punitive damages are properly awarded to punish unlawful conduct and deter its repetition.[64]

A debtor entitled to actual damages does not automatically qualify under § 362(k)(1) to recover punitive damages. The court must decide whether the circumstances of each case warrant punitive damages.[65] When considering an award for damages, the court should consider the gravity of the offense and set the amount to assure

---

[61] 11 U.S.C. § 362(k)(1); *see also Drnavich v. Cavalry Portfolio Service, LLC*, No. 05-10222005, U.S. Dist. LEXIS 38686, 2005 WL 2406030 (D. Minn. Sept. 29, 2005).

[62] *Bloom*, 875 F.2d at 228

[63] *Id.*

[64] *See BMW of N. Am. v. Gore*, 517 U.S. 559, 568 (1996); *Cooper Indus. v. Leatherman Tool Group*, 532 U.S. 424, 432 (2001).

[65] *Henry v. Assocs. Home Equity Servs. (In re Henry)*, 266 B.R. 457, 481-83 (Bankr. C.D. Cal. 2001).

1  that it will both punish and deter.[66]  A creditor's good faith or
2  lack thereof is relevant to sanctions under § 362(k)(1).[67]  The rule
3  in both the Ninth Circuit and California is that punitive damages
4  must  be  proportional;  they  must  be  reasonably  related  to
5  compensatory damages.[68]  However, there is no fixed ratio or formula
6  for  determining  the  proper  proportion  between  the  two.[69]     In
7  determining the appropriate amount of punitive damages, the court
8  usually  considers  the  following  factors:  (1)  the  nature  of  the
9  defendants' acts; (2) the amount of compensatory damages awarded;
10 and (3) the wealth of the defendants.[70]

11      In determining that the award of punitive damages is proper,
12 the court first considers the purpose of the automatic stay.  This,
13 as stated by Congress, is a fundamental protection given the debtor
14 and creditors.  Experienced counsel know that violating the stay is
15 not something to be trifled with or taken lightly.  Even when a
16 violation occurs, the creditor can purge the violation and avoid
17 serious damages by correcting the violation.

18 **Nature of Christensens' Actions**

19      In  considering  the  first  factor,  despite  having  actual
20 knowledge of the Bankruptcy Case on July 27, 2009, the Christensens

21

22      [66]  *Id.*

23      [67]  *See Walls v. Wells Fargo Bank (In re Wells)*, 262 B.R. 519, 529
24 (Bankr. E.D. Cal. 2001).

25      [68]  *Hudson v. Moore Business Forms, Inc.*, 836 F.2d 1156, 1162-63
   (9th Cir. 1987).

26      [69]  *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001,
27 1024-25 (9th Cir. 1985).

28      [70]  *Bauer v. NE Neb. Fed. Credit Union (In re Bauer)* No. EC-09-
   1281, 2010 Bankr. LEXIS 5096, (B.A.P. 9th Cir. Apr. 8, 2010).

wilfully violated the automatic stay and disregarded their obligations by continuing to retain possession of the Sheriff's Sale Property for almost two years.  As discussed previously, the Christensens acted wilfully when they decided on, implemented, and sustained the strategy to hold onto the Sheriff's Sale Property as a bargaining tool in negotiating other matters in the Bankruptcy Case.   This strategy was developed by the Christensens with the assistance of The Attorneys.   Though eventually returned, the Christensens and The Attorneys (who Bart Christensen testifies were in possession of the Sheriff's Sale Property for almost two months from February 2, 2011, through March 23, 2011) did not return the property to the Plaintiff-Debtors until after the hearing on the summary judgment motion in which the court issued very pointed comments concerning the continuing conduct of the Christensens and their counsel in retaining possession of the Sheriff's Sale Property.  This conduct by the Christensens in retaining possession of the Sheriff's Sale Property was not in good faith, and demonstrates a callous disregard of the rights of the Plaintiff-Debtors, bankruptcy estate, and black-letter law.

The court considers what efforts the Christensens made to ensure that they complied with the automatic stay, finding that the evidence establishes that the Christensens intentionally violated the automatic stay and ignored their obligations under 11 U.S.C. § 362.  Bart Christensen testifies that the Christensens obtained and developed the strategy to improperly retain possession of the personal property with the assistance of their experienced, knowledgeable bankruptcy counsel.  It was with this assistance and advice that the Christensens withheld the Sheriff's Sale Property

from the Plaintiff-Debtors from July 27, 2009, through March 23, 2011.

The court cannot and will not ignore that the continuing violation of the automatic stay was the result of a deliberate strategy developed by the Christensens with The Attorneys. The contentions that the Christensens foist upon the court is that the continued violation of the automatic stay occurred because the Christensens were not aware of the automatic stay when the Sheriff's Sale occurred, not aware of their obligation not to continue in the violation of the automatic stay, and not aware of their obligation to correct the violation of the automatic stay. To accept this contention, the court would have to reach the following conclusions:

> First, that The Attorneys who are knowledgeable, experienced bankruptcy counsel did not tell the Christensens about the automatic stay or did not know that the Christensens were in violation of the automatic stay;

> Second, that by retaining possession of the Sheriff's Sale Property until March 23, 2011, the Christensens and The Attorneys did not know that the Christensens were engaging in a continuing violation of the automatic stay;

> Third, that The Attorneys did not know or did not tell the Christensens that they had the obligation to immediately correct the violation of the automatic stay;

> Fourth, that the retention of the Sheriff's Sale Property while misrepresenting to the Plaintiff-Debtors that the Christensens were not in possession of the Sheriff's Sale Property and withholding that information from John Maxey was unintentional; and

> Fifth, that the Christensens and Robert Dudugjian innocently withheld the information that the Christensens were in possession of the Sheriff's Sale Property not only from the Plaintiff-Debtors, but also from John Maxey, a partner of The Attorneys expressly tasked with

> addressing the bankruptcy issues relating to the
> Sheriff's Sale, the Sheriff's Sale Property, and
> negotiating other issues in the Bankruptcy Case.

The court does not find credible an argument that these knowledgeable, experienced bankruptcy attorneys did not know that the Sheriff's Sale violated the automatic stay and that the Christensens were engaged in a continuing violation of the automatic stay from July 27, 2009, through March 23, 2011. Further, the court does not find it credible that The Attorneys would not and did not advise the Christensens that they were in violation of the automatic stay, the responsibilities of the Christensens to correct the violation of the automatic stay, and the consequences of intentionally violating the automatic stay. To the extent that The Attorneys would now testify that they withheld such information from the Christensens to leave them ignorant of their obligations, counsel cannot construct an exemption from the automatic stay by withholding such basic information from their clients. Ignorance of the law, even when arising from a strategy of counsel to try and insulate a client from responsibility, is not a defense.[71]

The court finds that the Christensens knowingly and intentionally retained possession of the personal property with full knowledge of the Bankruptcy Case, and that intentional possession was in violation of the automatic stay. The court finds the self-serving statements by the Christensens that they deeply regret what happened as unpersuasive and not credible. The

---

[71] *Botell v. United* States, No. 2:11-cv-01545-GEB-GGH, 2012 U.S. Dist. LEXIS 41172 (E.D. Cal. March 26, 2012); *Joe Hand Promotions, Inc. v. Estradda*, No. 1:10-cv-02165-OWW-SKO, 2011 U.S. Dist. LEXIS 61010 (E.D. Cal. June 8, 2011).

Christensens, with the assistance of The Attorneys, could have promptly acted to correct this violation of the automatic stay on July 27, 2009, when they and their counsel discussed the July 21, 2009 filing of the bankruptcy case.  The Christensens did nothing to correct their continuing violation of the automatic stay, and they did nothing to recover the Sheriff's Sale Property they had given to Tran even though they learned of the bankruptcy filing within four days of giving that property to Tran.

The court further finds that the Christensens and Robert Dudugjian intentionally did not disclose to John Maxey that the Christensens were retaining possession of personal property improperly obtained in violation of the automatic stay.  The Christensens and Robert Dudugjian intentionally sent John Maxey to address issues concerning the void Sheriff's Sale ignorant of the Christensens being in continuing possession of the Sheriff's Sale Property in violation of the automatic stay.  This omission of the highly relevant (and adverse to the Christensens) information was done to hide the existence of the continuing violation of the automatic stay not only from Mr. Maxey, but from the Plaintiff-Debtors and their counsel.  Then, even though on February 2, 2011, the Christensens delivered possession of the Sheriff's Sale Property to The Attorneys, this property was further withheld from the Plaintiff-Debtors by The Attorneys on behalf of the Christensens for almost two months while the Christensens and The Attorneys continued to try and negotiate a settlement with the Plaintiff-Debtors.

The court finds not credible testimony presented and rejects arguments of the Christensens that confusion existed for their

experienced, knowledgeable bankruptcy counsel concerning Chapter 13 Plaintiff-Debtors being in possession and control of property of the estate and the limited role of a Chapter 13 trustee. No effort was made by The Attorneys to obtain an order from the court directing that possession be delivered to a specific party (whether the Plaintiff-Debtors or Chapter 13 Trustee). Rather, the Christensens continued to retain possession and use that possession as leverage in ongoing negotiations with the Plaintiff-Debtors concerning other matters.

To the extent that any "confusion" existed for such knowledgeable, experienced bankruptcy counsel, The Attorneys knew how to seek either relief from the automatic stay so that the violation does not continue or obtain an order confirming to whom the Sheriff's Sale Property should be promptly delivered – but chose not to take such action. The Christensens and The Attorneys took no action, hiding the existence of the Christensens' continuing possession of the Sheriff's Sale Property. The court finds that this was intentionally and knowingly done in violation of the automatic stay, and that no confusion existed as to (1) the Christensens being in violation of the automatic stay, and (2) the Christensens continuing to violate the automatic stay. This conduct was in callous disregard for the law, the rights of the estate, and the rights of the Plaintiff-Debtors. The Christensens were not acting in good faith.

The court finds that the Christensens willfully and intentionally violated the automatic stay, and with the assistance of counsel continued to violate the stay for almost two years by retaining possession of the personal property, and based on such

40

conduct punitive damages are properly awarded to the Plaintiff-Debtors.   This conduct in violation of the automatic stay cannot and will not be ignored, excused, or condoned.

**Appropriate Amount of Punitive Damages**

The second factor considers the proportionality of the punitive damages to the compensatory damages awarded to the Plaintiff-Debtors.   In this Adversary Proceeding, the court has awarded damages totaling $7,197.32 (consisting of $947.32 for the lost coin, $1,000.00 for the unrecoverable property paid to Tran, $1,550.00 for emotional distress damages, $3,900.00 for attorneys fees in addressing the continuing violation of the stay, and $362.63 in prejudgment interest).   In a 2004 decision, *State Farm Mutual Auto Insurance Company v. Campbell*, 538 U.S. 408 (2004), the Supreme Court discussed the Constitutional reasonableness requirement in determining the amount of punitive damages.   While not setting a maximum ratio between punitive damages and compensatory damages, the court notes that punitive damage awards which are single digit multiple of the compensatory damages are more likely to withstand constitutional scrutiny.[72]   The Court in *State Farm* cited to its earlier holding in *BMW of North America v. Gore*[73] that a punitive damage award (which in *Gore* was 500 times the compensatory damages) in excess of four times the compensatory damages might be close to the line of constitutional impropriety.

---

[72]   *Cooper Industries v. Leatherman Tool Group*, 532 U.S. at 425.

[73]   517 U.S. at 582.

**Financial Condition of Christensens**

The last factor considers the wealth of the Defendant. From the testimony presented at trial, Defendant is a retired annuitant with the State of California, who is choosing to work 80 hours per month as an engineer for the State, in addition to receiving his State retirement benefits. Paula Christensen has worked as a registered nurse, though her current employment, lack of employment, or retirement benefit status is not disclosed. The Christensens own rental property, have significant-enough real property holdings to seek a tax-beneficial 1031 exchange in which like-kind property must be exchanged,[74] operate and invest in properties in towns other than which they live, and hire other persons to do repair work on their investment property. The underlying judgment for $300,000.00 (for which the Christensens are awarded $144,000.00 of the judgment amount) arises out of a disputed real estate transaction with the Plaintiff-Debtors.

Though the court has not been presented with detailed income and asset information for the Christensens, it is clear that they own investment property, live and operate investment property in different states, are highly educated, have sufficient investments and income to seek a 1031 tax-deferred exchange, Bart Christensen receives both a pension and additional income from the State of California, and can afford to be represented by knowledgeable, experienced counsel.

The court determines that punitive damages in the amount of

[74] 26 U.S.C. § 1031 provides a tax device to defer the tax recognition of a gain or loss from an exchange of like kind property. The property being exchanged and received by the tax payer must be held for productive use in a trade or business, or for investment.

42

$7,500.00 is appropriate in this Adversary Proceeding. In this case the punitive damages are equal to the actual damages. This one-to-one ratio of punitive damages to actual damages is well within the Constitutional parameters enunciated by the Supreme Court. This amount is significant enough to deter this type of willful, intentional violation of the automatic stay in the future. This amount is not unreasonable as to the Christensens in light of their having engaged in a transaction with the Plaintiff-Debtors to generate a $300,000.00 judgment, both the Christensens being professionals, the Christensens owning investment rental properties, and those investment properties and their incomes being great enough to warrant structuring a 1031 tax-deferred exchange.

If the Christensens believe that further trial on the amount of punitive damages is warranted based upon their financial condition, the court will consider a request for new trial on that issue pursuant to Federal Rule of Civil Procedure 59 as made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 9023. Any such motion for new trial on this issue must be filed not later than 14 days after entry of the judgment in this Adversary Proceeding. If the court determines upon a post-judgment motion of the Christensens that further trial is proper, the court will set a discovery schedule to allow the Plaintiff-Debtors to reasonably determine and verify the financial condition of the Christensens. For such further trial the court will vacate the portion of this Decision setting the amount of punitive damages, and such amount will be determined at the further trial on that issue without regard to the amount set forth herein.
///

**CONCLUSION**

Judgment in the amount of $15,259.95 for the Plaintiff-Debtors against the Christensens is awarded. This judgment is comprised of $1,947.32 of damages for personal property taken and not returned to the Plaintiff-Debtors, $1,550.00 of emotional distress damages for Soo Nan Tse, $362.63 of damages for prejudgment interest, $3,900.00 of attorneys' fees damages for legal services in correcting the continuing violation of the automatic stay by the Christensens, and $7,500.00 of punitive damages. The Plaintiff-Debtors are also properly entitled to recover their costs and expenses in connection with this Adversary Proceeding. Fed. R. Bank. P. 7054(b). This Memorandum Opinion and Decision constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52 and Federal Rule of Bankruptcy Procedure 7052.

The court shall enter a separate judgment consistent with this Memorandum Opinion and Decision.

Dated: April *11*, 2012

RONALD H. SARGIS, Judge
United States Bankruptcy Court

## CERTIFICATE OF MAILING

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that the attached document(s) was served by mail to the following entities listed at the address(es) shown below:

Service List:

John Maxey
13 SierraGate Plaza #B
Roseville, CA 95678

Peter Macaluso
7311 Greenhaven Dr #100
Sacramento, CA 95831

Bun Auyeung
6311 Point Pleasant Rd
Elk Grove, CA 95757

Soo Han Tse
6311 Point Pleasant Rd
Elk Grove, CA 95757

David Cusick
PO Box 1858
Sacramento, CA 95812-1858

Office of the U.S. Trustee
Robert T Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814

DATE: 4/12/12

_____
Deputy Clerk